UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ZEFERINO ORTIZ RODRIQUEZ,

PETITIONER;

vs.                                                    Case No.  5:06-cv-28-Oc-10GRJ

SECRETARY OF THE DEPARTMENT
OF CORRECTIONS; ET. AL.,

RESPONDENTS.
_____

## ORDER DENYING PETITION

## I.  STATUS

Petitioner Zeferino Rodriquez (hereinafter "Petitioner" or "Rodriquez") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) and appendix (Doc. #2, Pet. Apx. A-B) pursuant to 28 U.S.C. § 2254 on January 12, 2006.[1]  Petitioner challenges his conviction entered in the Fifth Judicial Circuit Court, Marion County, Florida.  Petition at 1.  Respondent filed a Response (Doc. #14, Response) and supporting exhibits (Doc. #15, Exhs. A-V), including Petitioner's postconviction motions and hearing transcripts.  Petitioner filed a Reply (Doc. #17, Reply).  This matter is ripe for review.

---

[1] The Petition (Doc. #1) was docketed and filed with the Court on January 20, 2006; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing."  Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

## II. PROCEDURAL HISTORY

On June 8, 2000, Petitioner was charged by Information with (count one) DUI manslaughter, (count two) vehicular homicide, (counts three and four) DUI with serious bodily injury, and (count five) DUI with property damage. Exh. A. Petitioner proceeded in a jury trial on October 15-17, 2001. Exh. B. The jury returned a guilty verdict on the DUI manslaughter count, two counts of DUI with serious bodily injury, and one count of DUI with property damage. Exh. C; Exh. D at 517; Exh. E at 581. Petitioner was sentenced to fifteen-years incarceration on the DUI manslaughter count and credit for time served on the remaining counts. Exh. D. at

Petitioner, through appointed counsel, filed a direct appeal on June 18, 2002. Exhs. F, G. Petitioner's amended brief raised three grounds. Exh. G. The State filed an Answer brief. Exh. H. On December 27, 2002, the Fifth District Court of Appeal entered an order affirming Petitioner's conviction. Rodriquez v. State, 837 So. 2d 478 (Fla. 5th DCA 2002); Exh. J. Petitioner moved in the appellate court for rehearing, rehearing en banc, and/or certification of questions to the Florida Supreme Court. Exh. K. The State filed a brief in response. Exh. L. The appellate court denied Petitioner's motions. Exh. M.

Through appointed counsel, Petitioner sought discretionary review from the Florida Supreme Court of the appellate court's order. Exhs. N, O. The State filed a brief in response. Exh. P. On January 23, 2004, the Florida Supreme Court

denied the petition for discretionary review, determining that it did not have jurisdiction. Rodriquez v. State, 868 So. 2d 524 (Fla. 2004); Exh. Q.

Petitioner, proceeding *pro se*, then filed motions for postconviction relief. On February 19, 2004, Petitioner filed a motion to reduce or correct his sentence pursuant to Florida Rule of Criminal Procedure 3.800(c).[2] See Response at 5, fn. 2. On February 23, 2004, the postconviction court denied the Rule 3.800(c) motion. Id.

On May 22, 2004, Petitioner filed a postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850 (hereinafter "Rule 3.850 Motion) raising four grounds of relief. Exh. R. The State filed a response. Exh. S. The trial court summarily denied the motion. Exh. T. Petitioner moved for rehearing, which the postconviction court denied. Exhs. U, V.

Petitioner appealed the postconviction court's order denying the motion. Exh. W. On March 8, 2004, the appellate court *per curiam* affirmed the postconviction court's order. Rodriquez v. State, 900 So. 2d 570 (Fla. 5th DCA 2005)(table); Exh. X. Petitioner filed a motion for hearing, which was denied. Exhs. Y, Z. Mandate issued on May 2, 2005. Exh. AA.

On January 12, 2006, Petitioner initiated the federal action *sub judice*, raising four grounds of relief:

---

[2]Respondent notifies the Court that Petitioner's Rule 3.800(c) motion is not apart of the exhibits in this case and submits that the motion does not affect the timeliness or the merits of this case. Response at 5, fn. 2. The Court agrees with Respondent.

1) trial counsel rendered ineffective assistance by failing to object to the testimony of Officer Kline regarding the statement Rodriquez allegedly made to him and failing to request a cautionary instruction to the jury "on the defendant's prior statements";

2) trial counsel rendered ineffective assistance by failing to object when the judge allowed the jury to separate after retiring to consider their verdict;

3) the trial court erred by denying Petitioner's motion to suppress based on the Vienna Convention, and;

4) the trial court erred in denying Petitioner's motions for mistrial.

Petition at 5-17.[3]

### III.  Applicable § 2254 Law

Petitioner filed his timely[4] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Consequently, post-AEDPA law governs this action.[5]  Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.'  Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir.

---

[3]Because Petitioner inserted additional, non-consecutively numbered pages within the Petition, the Court's pinpoint citations herein refer to the electronic number on the top of page assigned by the Court's Case Management and Electronic Filing System.

[4]The AEDPA imposes a one-year statute of limitations on § 2254 actions.  28 U.S.C. § 2244(d).  Respondent concedes that the Petition in this Court was timely filed.  Response at 7.  The Court agrees.

[5]Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007);  Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n. 9 (11th Cir. 2007).

2002)."[6]   AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."[7]   Prior to the Court reviewing a claim on the merits, certain  aspects of the AEDPA, are relevant to this matter.

## A.   Deference to State courts

A federal court may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States."   28 U.S.C. § 2254(a). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254.[8] Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair."[9]

Where a petitioner's claim raises a federal question that was adjudicated on the merits in the state courts, the federal court must afford a high level of deference

---

[6] Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).  See also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11th Cir. 2003).

[7] Bell v. Cone, 535 U.S. 685, 693 (2002).

[8] Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000).

[9] Carrizales, 699 F.2d at 1055.

to the state court's decision.[10]  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[11]  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.[12]

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.[13]  In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state

---

[10]See Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

[11]See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003).

[12]Ferguson, 527 F.3d at 1146; Wright v. Sec. Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002).  See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

[13]Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law."[14]

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result.[15] Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them."[16]

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

_____

[14]Wright v. Van Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

[15]Brown, 544 U.S. at 141; Mitchell, 540 U.S. at 15-16.

[16]Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell, 540 U.S. at 16.

where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." [17] Depending upon the legal principle at issue, there can be a range of reasonable applications.[18] Thus, the state court's decision is not subject to federal review *de novo*; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard.[19]

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question.[20] Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005); <u>Henderson</u>, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed

---

[17]<u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-77 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18.

[18]<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663-64 (2004).

[19]<u>Id.</u> at 665-66.

[20]<u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006).

determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo.* Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

## IV.  Findings of Fact and Conclusions of Law

This Court has reviewed the record and concludes that no evidentiary proceedings are required in this Court.[21]  Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

### A.  Ineffective Assistance of Trial Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).[22]  Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.[23]  In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled

---

[21]Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).

[22]Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).

[23]Newland, 527 F.3d at 1184.

to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[24]   Petitioner bears a heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable."[25]  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."[26] An attorney is

---

[24]Strickland, 466 U.S. at 688.

[25]Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006).

[26]Strickland, 466 U.S. at 689.

not ineffective for failing to raise or preserve a meritless issue.[27] "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"[28]

In ground one, Petitioner argues that trial counsel rendered ineffective assistance by failing to object when the judge did not give the jury a cautionary instruction regarding Petitioner's inculpatory statements made at the time of his arrest, which were introduced at trial through Trooper Kline's testimony. Petition at 5. Petitioner submits that the judge instructed the jury that Petitioner "did not testify because he exercised his fundamental right," but counsel did not object when the jury heard Petitioner's statement "that he only had five beers, and that he did not see that car when he made his turn into his house because he didn't have his headlights on[,]" introduced into evidence by Trooper Kline Id. at 6-7. Petitioner further argues that defense counsel should have requested the jury receive an instruction regarding his statements. Id. Petitioner submits that Trooper Kline's testimony, coupled with

---

[27]Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (stating "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

[28]Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

the prosecutor's remarks during closing, "effectively influenced the jury," particularly because the "FDLE's test results were inadequate." Id.

In Response, Respondent refers the Court to the postconviction court's order denying Petitioner relief on this ground. Response at 14. Respondent points out that defense counsel "did object to the admission of the statement and, in fact filed a motion to suppress the same." Id. at 14. Respondent submits that the postconviction court denied Petitioner relief on this issue finding that Petitioner did not establish prejudice based on the overwhelming evidence of his guilt. Id. Respondent argues that the postconviction court's order of denial was not contrary to, or an unreasonable application of clearly established Supreme Court precedent. Id. at 15. Additionally, Respondent submits that Petitioner has not presented evidence that the state court's application of the law to the facts in this case was incorrect. Id.

Upon review of the record, the Court denies Petitioner federal habeas relief on ground one. The Court incorporates herein the pertinent facts of the case as set forth in the Fifth District Court of Appeal's December 27, 2002 Opinion and Order and the postconviction court's November 16, 2004 Order, denying Petitioner's Rule 3.850 motion. Exhs. J, T. The appellate court noted the following pertinent acts, *inter alia*:

> The van Rodriquez was driving contained two beer bottles between the driver and passenger seats. One of the beer bottles was open and the bottles were cold to the touch. Another cold beer bottle was on the ground near the van. Rodriquez had a strong odor of alcohol.

A state trooper, Gikas, investigated at the scene and spoke to witnesses Tom and Donna Luffman. In addition, Gikas reported Rodriguez had noticeably bloodshot eyes. Based on his investigation, Trooper Gikas believed that there was a reasonable basis for him to conclude that Rodriguez was under the influence to the extent that his normal facilities were impaired. As such, a blood draw was ordered. . . . .

Trooper Kline testified that when he arrived at the accident scene he observed a twist-off cap to a Bud Light beer bottle on the driver's side floor board and another twist-off cap to a Bud Light beer bottle up on the dashboard of Rodriguez's van . . . . . Kline also entered Rodriguez's hospital room while Rodriguez was asleep and detected the odor of alcohol coming from Rodriguez's breath. Finally, Kline testified that Rodriguez, after being released form the hospital, acknowledged to him that he drank 5 beers and that he could not see the truck.

Exh. J.

Additionally, the postconviction court noted the following facts, *inter alia*:

<u>Donna Luffman</u>: Mrs. Luffman testified that she and her husband were driving southbound on highway 441, following a pickup. She noticed a van in the northbound lane who was making a turn but "not stopping." The van broadsided the pickup, which was traveling in the right lane of the two southbound lanes.

<u>Thomas Luffman</u>: Mr. Luffman testified that he was driving 55 m.p.h., traveling sough on Highway 441. His vehicle was behind a little pickup. He witnessed a van traveling northbound get into the turn lane. The van did not appear to slow down, and broadsided a truck. Mr. Luffman contacted the driver of the van and smelled alcohol.

<u>Robert v. Wayne Graff, Jr.</u>: Mr. Graff was the firefighter-paramedic dispatched to the scene of the accident. He could smell alcohol on Mr. Rodriquez and noticed beer in his van. He later transported the "14 year old son, the mother and the father" from the pickup truck to the hospital.

<u>John Gikas</u>: Trooper Gikas was dispatched to the accident. He smelled alcohol on Mr. Rodriguez and saw beer bottles in the van. Trooper

Gikas determined that blood would be drawn from Mr. Rodriguez. He then took possession of the blood sample.

<u>Glenn Kline</u>: Trooper Kline was the traffic homicide investigator and offered as an expert in automobile reconstruction. Trooper Kline found beer bottles in Rodriguez' van. Trooper Kline determined that there was no indication of excessive speed on either vehicle. The cause of the accident was a violation of right-of-way, "turning left at an intersection, which would have been the van, which was required to yield to any southbound traffic in those lanes." He also testified that he noticed a "strong odor" of alcoholic beverage. Trooper Kline later arrested Rodriguez and transported him back to Marion County. During this transport, Trooper Kline testified that Rodriguez made statements to him. Specifically, Rodriguez stated "he only had five beers." And that he said "he didn't see that car when he made his turn into his house because he didn't have his headlights on." During Trooper Kline's testimony, defense attorney Mengers objected to admission of Rodriguez's statements and renewed a previously filed motion to suppress.

<u>Katherine Warniment</u>: Ms. Warniment was the crime lab analyst, offered as an expert in forensic toxicology. The result of Defendant's blood alcohol analysis was ".19 gram percent ethyl alcohol present in the blood."

<u>Dr. Yucht:</u> Dr. Yucht was the emergency medicine attending physician. In the course of treating defendant, he ordered a blood alcohol analysis. Dr. Yucht testified that initially Defendant was "in an unresponsive state." The result of Defendant's blood alcohol analysis was ".196 milligrams per deciliter or .196."

Exh. S.

Petitioner faults defense counsel for not objecting during trial to the admission of his inculpatory statement to Trooper Kline, similar to Petitioner's claim in ground three of his Rule 3.850 motion. However, as the postconviction court noted, Petitioner alleges the wrong facts. <u>See</u> Exh. T at 7. The record establishes that defense counsel <u>did</u> file a pretrial motion to suppress Petitioner's statement and also

objected during the Trooper's testimony at trial. The trial court overruled counsel's objections. When addressing this claim in Petitioner's Rule 3.850 motion, the postconviction court identified <u>Strickland</u> as the applicable law and reasonably applied this standard to the facts of the case. The appellate court affirmed the postconviction court's order.

Based on the foregoing, the Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application of clearly established federal law. Defense counsel cannot be deemed to have rendered prejudicial performance when his motion to suppress and objections to the statements were denied. Thus, there was no instruction to give the jury regarding Petitioner's inculpatory statements. Moreover, as the postconviction court ruled, Petitioner cannot establish that the outcome of his case would have been different but for the admission of Trooper Kline's testimony concerning Petitioner's inculpatory statement. In addition to Petitioner's own inculpatory statements, the State introduced other eye witnesses who reported seeing open beer cans on the floor board of Petitioner's car, his blood shot eyes, the odor of alcohol emitting from Petitioner's body, and the blood samples taken by law enforcement measuring Petitioners' blood alcohol level. Based on the foregoing, Petitioner is denied relief on ground one.

In ground two, Petitioner argues that defense counsel rendered ineffective assistance by failing to object when the judge allowed the jury to separate after retiring to consider their verdict. Petition at 10-11. Specifically, Petitioner claims that

the judge failed to give the cautionary instructions in violation of "Florida Rules of Criminal Procedure, Rule 3.370 which states in part: 'If jurors are allowed to separate the trial judge shall give appropriate cautionary instructions.'" Id. at 11. Further, Petitioner argues, "Florida Statute Section § [sic] 918.06 and 918.07 states that an officer <u>shall</u> guard the jurors when they leave the jury box and such officer must be warn [sic] not to permit any persons to communicate with them on any subject." Id. at 11-12 (emphasis in original).

In Response, Respondent notes that the postconviction court analyzed the claim under the <u>Strickland</u> standard. In denying this claim, Respondent states that the postconviction court noted that the bailiff was instructed to guard the jury and the jury repeatedly admonished. Id. at 15-16. Respondent argues that the Court should deny Petitioner relief on ground two because Petitioner has not established that the State court's decision was contrary to, or an unreasonable application of, Supreme Court precedent. Id. at 16.

The Court denies Petitioner habeas relief on ground two. Here, Petitioner claims that defense counsel rendered ineffective assistance by not objecting when the trial judge purportedly failed to give the jury a "cautionary instruction." Petition at 9-10. In denying Petitioner relief on this claim, the postconviction court noted:

> At the conclusion of the first day of trial, October 15, 2001, the court admonished the jury about their duty not to discuss the case until its conclusion. On the second day of trial, October 16, 2001, the court again admonished the jurors. At the conclusion of trial, the following conversation occurred:

> **Bailif:** The smoking person would like to smoke right before they start.
>
> **Court:** Okay. Tell them yeah but don't discuss the case until they're all together.
>
> **Bailiff:** Right.
>
> **Court:** Okay, don't discuss anything about it until they're all together. You're going to be down there with them?
>
> **Mengers:** What are lunch plans?
>
> **Court:** Well, I was thinking about that. It's just ten minutes after. I didn't get them anything, but if we need to, let them go ahead and go through lunch.

Exh. T. at 3-4 (internal citations omitted). Again, contrary to Petitioner's allegations, the record establishes that the trial court repeatedly admonished the jury earlier in the trial and gave specific instructions at the conclusion of the trial. Id. at 8. The postconviction court applied the Strickland standard to the facts in this case and denied Petitioner relief. The appellate court affirmed the postconviction court's decision. The Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application of clearly established federal law. Petitioner does not claim any juror misconduct; rather, Petitioner suggests that the jury may have been "exposed to outside influence." As previously stated, the record belies Petitioner's contentions. As such, Petitioner is denied relief on ground two.

## B. Trial Court Error Claims

In grounds three and four Petitioner raises claims involving trial court error. Petition at 11. In ground three, Petitioner argues that the trial court violated

international law, specifically the Vienna Convention, when it denied his motion to suppress.  Id. at 14.   Petitioner argues that he was "improperly denied his right to have the Mexican Consulate notified of his detention and arrest which this way deprived the [P]etitioner under International Law . . . . ."  Id. at 15.   Petitioner submits that he "was prejudiced by this because the police were able to obtain physical evidence and statements from the [P]etitioner at the time of his detention and arrest which were used by the state courts at trial to establish [P]etitioner's guilt as to the instant charged offenses."  Id.

Before the Court reviews Petitioner's claim under the requirements set forth in the AEDPA,  an overview of the Vienna Convention is necessary.  See Vienna Convention, 21 U.S. T. 77, T.I.A.S. No. 6820.  Upon the advice of the Senate, the United States ratified the Vienna Convention and the Optional Protocol Concerning the Compulsory Settlement of Disputes (Optional Protocol, 21 U.S. T. 325, T.I.A.S. No. 6820) to the Vienna Convention.[29]   The purpose of the Convention, according to its preamble, is to "contribute to the development of friendly relations among nations."  See 21 U.S. T. at 79; Medellin, 128 S.Ct. at 1353 (citing Sanchez-Llamas, 548 U.S. 331 (2006)).  Here, Petitioner relies on Article 36 of the Convention, which provides:

> If [a pre-trial detainee] so requests, the competent authorities of the receiving State shall without delay inform the consular post of the sending State if, within its consular district, a national of the State is

---

[29]See Medellin v. Texas, 128 S.Ct. 1346, 1353 (2008).

arrested or committed to a prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody, or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under the subparagraph. Vienna Convention, Art. 36(1)(b). . . .

Medellin, 128 S.Ct. at 1353.

If a dispute arises among nations on the interpretation or the application of the Vienna Convention, the International Court of Justice (hereinafter "ICJ") has jurisdiction to hear the dispute. Medellin, 128 S.Ct. at 1353-54.[30] The United States Supreme Court, however, has ruled that an ICJ opinion regarding a claim brought under Article 36 of the Vienna Convention does not preclude the application of state default rules in state habeas petitions. Id. (discussing Sanchez-Llamas v. Oregon, 548 U.S. 331 (2006)); see also Maharaj v. Sec'y Dep't of Corrections, 432 F.3d 1292, 1320 (11th Cir. 2005)(noting that there is no federal precedent supporting the idea that a decision from the ICJ is binding upon any state or federal court, and, as such, the lower court's decision did not result in a decision contrary to Supreme Court precedent and was not unreasonable application of clearly established federal law).

---

[30]In the Case Concerning Avena and Other Mexican Nationals, 2004 ICJ 12 (hereinafter "Avena"), the ICJ ruled that the United States had violated the Vienna Convention by failing to inform 51 Mexican nationals of their Vienna Convention rights. Medellin, 128 S.Ct. at 1355. As such, "the United States was obligated 'to provide, by means of its own choosing, review and reconsideration of the convictions and sentences of the [affected] Mexican nationals.'" See Id. (discussing Avena).

In Medellin, the United States Supreme Court held that the ICJ's opinion did not constitute directly enforceable federal law, even though the ICJ found that the United States had violated certain Mexican nationals' rights under Article 36 of the Vienna Convention.[31] The petitioner in Medellin was a Mexican national, convicted of capital murder, and sentenced to death in the United States.[32] Similar to the Petitioner's claim *sub judice*, Medellin challenged his criminal conviction in his first application for state post-conviction relief, arguing that he was entitled to habeas relief because local law enforcement officers did not inform him of his right under the Vienna Convention to contact his country's consulate.[33] The Texas Court of Criminal Appeals ruled that "Medellin's Vienna Convention claim was procedurally defaulted and that Medellin had failed to show prejudice arising from the Vienna Convention violation." Id. The United States Supreme Court affirmed. Id.

The Eleventh Circuit Court of Appeal's decision in Darby v. Hawk-Sawyer, 405 F.3d 942, 946 (11th Cir. 2005), is similar to the United States Supreme Court's ruling in Medellin. In Darby, the petitioner, a Jamaican national, filed a habeas petition pursuant to 28 U.S.C. § 2241 arguing that he was entitled to relief because he was not provided an opportunity to contact his country's consulate upon arrest.[34] The

---

[31] Medellin, 128 S.Ct. at 1353.

[32] Id.

[33] Id. at 1353.

[34] Darby, 405 F.3d at 942.

Eleventh Circuit affirmed the district court's denial of the petition, reasoning that because petitioner did not allege how the lack of contact with his consulate affected his trial or caused him prejudice, he was not entitled to relief.[35]

Here, Petitioner argues that as a Mexican citizen, upon his arrest, he was entitled to be informed of his right to contact the Consulate in Mexico pursuant to the Vienna Convention. Petitioner believes that the officers' failure to advise him of his right to contact the Mexican Consulate deprived him of the Consulate's "advise, assistance, and services." Petition at 15. Petitioner appears to have exhausted this claim by raising it on direct appeal. Thus, Respondent refers the Court to the State appellate court's order denying Petitioner relief on this claim. Response at 17. In denying Petitioner relief on this claim, the appellate court ruled, "treaties are between countries, and individual citizens have no standing to challenge violations of such treaties in the absence of the protest of the sovereign involved." Id. at 17 (citing Rodriquez v. State, 837 So. 2d 524 (Fla. 2004)).

The Court turns to the Eleventh Circuit Court of Appeals case Darby v. Hawk-Sawyer, 405 F.3d at 942, which reasoned that the Vienna Convention "*arguably* confers on an individual the right to consular assistance following arrest." See Id. at 946 (11th Cir. 2005)(citing Breard v. Greene, 523 U.S. 371 (1998))(emphasis added)(assuming *arguendo* that the Vienna Convention confers an individual rights, but does not decide the issue as a matter of law)); But see Matta-Ballesteros v.

---

[35] Id. at 946.

Henman, 896 F.2d 255 (11th Cir. 1990)(holding that "[i]t is well established that individuals have *no standing* to challenge violations of international treaties in the absence of a protest by the sovereigns involved.")(emphasis added)).   While Petitioner may *arguably* have an individual right under the Vienna Convention, Petitioner does not establish that he is entitled to federal habeas relief under the strictures of AEDPA.   Petitioner's contentions that he went without the "advise, assistance, and services of the Mexican Consulate[,]" does not show an impact on his trial, particularly because Petitioner had the option for appointed counsel.   As the Supreme Court has noted, "'[e]ven where [such claims under Vienna] properly raised and proved, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial.'" Darby, 405 F.3d at 946 (citing Breard, 523 U.S. 371 (1998))(remaining citations omitted).  To the extent Petitioner suggests that he would not have given his inculpatory statements to law enforcement had he been advised of his ability to contact the Mexican Consulate, there are no allegations that Petitioner's statements were not knowingly, willfully, and voluntarily given to law enforcement.   The record shows that Petitioner was advised of his Miranda rights. As such, Petitioner is denied relief on ground three.

In ground four, Petitioner claims that the trial court committed an error when it denied defense counsel's two motions for mistrial.   Petition at 16.   Petitioner explains that defense counsel moved for a mistrial based on Trooper Klines'

testimony regarding Petitioner's blood alcohol level.  Id.  Petitioner argues that the prosecutor's closing remark contained "facts not in [sic] introduced into evidence." Id. at 17.  Defense counsel moved for mistrial a second time based on the prosecutor's closing remark that Petitioner caused the loss of the Sullivan's son.  Id. at 17.  Petitioner claims the prosecutor's statement "unfairly prejudiced [him] by appealing to the jurors' emotions and s[y]mpathy."  Id. at 17.

In Response, Respondent refers the Court to the Fifth District Court of Appeal's order denying Petitioner relief on this claim.  Response at 17 (citing Rodriquez v. State, 837 So. 2d at 481).  Respondent argues that the State court's decision was not contrary to, nor an unreasonable application of clearly established Supreme Court precedent.  Id. at 18.  Respondent also submits that Petitioner has not presented any evidence that the State court's application of law to the facts of his case was incorrect.  Id.

Although a federal court reviewing a state prisoner's habeas petition may not "reexamine state-court determinations on state-law questions, it may review state evidentiary rulings to determine whether the rulings violated the petitioner's due process rights.[36]   The federal court's inquiry is specifically limited to determining whether the evidentiary errors "'so infused the trial with unfairness as to deny due

---

[36]Felker v. Turpin, 83 F.3d 1303, 1311-12 (11th Cir. 1996).

process of law.'"[37] Whether an evidentiary error is of such magnitude as to deny fundamental fairness is to be made in light of the evidence as a whole.[38]

Upon review of the record, in denying Petitioner's claim concerning the mistrial motions, the appellate court noted:

> The first [motion for mistrial] was occasioned by the testimony of Trooper Kline that he had explained that the reason for the [defendant's] arrest was that his blood alcohol level was twice over the legal limit. This was not prejudicial because the fact of his blood alcohol level was later admitted into evidence at trial, and, indeed, it was more than twice the legal limit. The second mistrial motion dealt with the prosecutor's comment in closing argument that the parents of Keith Sullivan, who was killed in the accident, were now without a son. Given that this fact was already known to the jury, the prosecutor's reference to it could not have vitiated the fairness of the entire trial. See State v. Murray, 443 So. 2d 955 (Fla. 1984).

Exh. J.

The Court denies Petitioner federal habeas relief on ground four. Petitioner's allegation that Trooper Kline's testified to facts concerning his blood alcohol level, which was not introduced into evidence, is refuted by the record. Additionally, Petitioner's claim that the prosecutor's closing remarks appealed to the jurors' emotions and sympathy did not infuse the trial with unfairness as to deny due process of law. As the appellate court noted, based on the testimony introduced during the trial, the jury was aware that the Sullivan family had lost their eldest son

---

[37] Id. (quoting Lisenba v. California, 314 U.S. 219, 228 (1941).

[38] Id. at 1312.

in the accident caused by Petitioner.  The Court finds that the State court's decision was neither contrary to, nor an unreasonable application of federal precedent.

### V.  Conclusion

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** with prejudice.  The **Clerk of the Court** is directed to enter judgment accordingly, terminate any pending motions, and close this case.

**IT IS SO ORDERED**

**DONE AND ORDERED** at Ocala, Florida, this 1st day of September, 2009.

UNITED STATES DISTRICT JUDGE

SA: alj
Copies: All Parties of Record